[*Special Term*, 1871.]

## THOMAS NIXON *v.* CHATFIELD AND WOODS.

Where one member of a firm sold out his interest to the other members
who had a better knowledge of the condition and assets of the concern,
and relied upon their statements, which he afterward concluded were
not true, and brought suit to set aside the sale:

*Held,* on a motion by the plaintiff for the inspection of the books, that the
evidence to support the motion need not amount to proof of the plaint-
iff's case, and that a showing of a probable want of correctness in the
statements on which the settlement was made, will be sufficient to
sustain the motion.

THIS is a motion by the plaintiff that the defendants be
required to permit him to inspect and take copies of the
mercantile books of the late firm of " Nixon, Chatfield &
Woods," of which he was a member.

These parties, who together composed the firm of Nixon,
Chatfield & Woods, about the first of June, 1865, agreed
that Chatfield and Woods should purchase out Nixon, the
plaintiff, on terms which are stated in the petition.

The petition alleges, that since selling out he has ascer-
tained that he was deceived as to the condition and value
of the assets of the firm.   That he was not a book-keeper,
nor acquainted with the condition of the firm, and its
profits, he being altogether absorbed in the manufacturing
department.

That he relied upon the statements of the defendants,
his partners, who informed him that the rag department
of the concern had lost $600 within the then current year,
and that the entire profits of the business had not been
more than about $19,000 during the same time; whereas the
rag department, as he had learned since selling out, had
made ten thousand dollars, and the profits of the other
business of the house had been far greater than represented
by his partners when he sold out.

He states, also, that he was, by agreement with the defendants, still to have an opportunity to examine, with a competent book-keeper, the books after the settlement; and declares that he had not had opportunity to make such examination before; but that when he in the year 1866, after settlement, applied for the privilege of examining the books, it was denied him.

This motion was made upon the statements in the petition. The motion was not granted for want of affidavits sustaining the allegations of the petition, sufficiently to justify an investigation. The affidavits have now been filed.

Mr. Nixon himself, by affidavit, affirms the allegations of the petition, and states some circumstances justifying his complaint. It appears from his affidavit, and that of Mr. Anderson, the book-keeper, that he had not had a satisfactory opportunity to examine the books. He states that he has ascertained from persons in the like business that the last year was as profitable as the year before, when, with about the same amount of business, the firm made more than double the profits which the defendants represented to him were made during the last year.

A. T. Bennett's affidavit is also submitted, who was employed in the rag department. His statements sustain the allegations of the petition, in some measure, as to the profits made by the rag department.

Mr. Anderson, the book-keeper, employed by Mr. Nixon to assist in the examination of the books, sustains Mr. Nixon's statement that no general examination of the books was had by them, and that they had not sufficient opportunity to make one, and he thinks he heard the defendants, or one of them, agree that the opportunity should afterward be furnished when the books could be better spared.

All these statements are contradicted by affidavits on the part of the defendants, more extended and circumstantial than those offered by the plaintiffs.

*Hoadly & Johnson,* for the motion.

*Gholson,* contra.

TAFT, J.   The evidence offered by the plaintiff does not go very far toward making out a *case* against the affidavits offered by the defendants.

But I do not propose on this motion to try the case.   The question for me to decide is, whether the plaintiff has made it appear, by his evidence, reasonable and right that he should have inspection of those books.   It is very clear that if there is any ground for an investigation at all of this controversy, the books contain the evidence which is to determine the case, in all probability; and outside of the books, we must expect a very imperfect showing.   I do not think it reasonable to require a strong case to be made out by the plaintiff before giving him an opportunity to examine those books.   Mere groundless suspicion is not enough. But those books contain the history of the joint business of these parties, and if there is any real ground of controversy between these parties to this settlement, as to the amount of profit or of losses, Nixon has a strong claim to see those books.   It is true that he and his partners agreed upon a settlement by which *they* took the property and business, and the books properly passed, with the property, to them.   But, nevertheless, I think there remained still in Nixon a contingent interest, in the record of the transactions of the firm of which he was a member.   It is not necessary to say that this amounts to a property in those books.   But if he has occasion to look into those books, or thinks he has, and makes a civil application to see them, and is refused, that refusal itself, taken with the fact asserted by him and his book-keeper, that he has not had an opportunity to advise himself of what they contain, is a circumstance that suggests the propriety of an examination.

Nixon *v.* Chatfield & Woods.

It may be, that Mr. Nixon's grounds for supposing that he has been wronged, will prove groundless. That is quite probable. Both parties were out of humor with each other, and suspicious. The plaintiff seems, by the defendant's affidavit, to have been dissatisfied at the time of the settlement, and to have given a halting and unwilling assent to it.

Now, he declares, in substance, that he was not prepared to make an intelligent settlement for want of a knowledge of the contents of those books.

Considerable effort seems to have been made to have a finality. But in matters of such magnitude, neither party is likely to remain satisfied, if not fully advised of the grounds on which he acts. Such finalities are apt to break out again.

It is quite probable that if the plaintiff had been allowed to make the desired examination of the books with his book-keeper, he would have been satisfied, and this litigation would have been spared.

In coming to a conclusion on this motion, the case looks to me very different from the case of one who should be demanding permission to inspect books of other men, in which he had never had any joint interest. I can see no hardship or danger to the defendants, in allowing the plaintiff to have inspection of these books, and I have concluded to grant the order.

I trust the parties will be able to agree upon the manner in which the plaintiff shall have access to these books, so that no more special order may be necessary as to the manner in which inspection shall be had.